## Sayre et al. v. Britt et al.

*Practice, equity—Preliminary injunction—Nuisance — Garage — Residential neighborhood.*

The maintenance of a public service garage in a strictly residential section of the city will be restrained where such business is shown to be destructive or prejudicial to the quiet and orderly condition of the neighborhood and the comfort and enjoyment of the occupants of the houses situate in that neighborhood, because of noises, offensive odors and the obstruction of the streets and footways by the increased number of vehicles brought into the neighborhood.

Rule for preliminary injunction.   C. P. No. 3, Phila. Co., June T., 1924, No. 9850, in Equity.

*S. McDowell*, for plaintiffs;  *James A. Mahoney*, for defendants.

SMITH, J., specially presiding, Aug. 13, 1924.—Complainants are the owners and occupiers of dwelling-houses, situate on the north and south side of East Tioga Street, between No. 800 and No. 900 east.

The defendant Mary Britt is the owner of a certain lot or piece of ground, consisting of Nos. 818-820 East Tioga Street, in the 33rd Ward of the City of Philadelphia, containing about 30 feet front on said Tioga Street and extending of that width southward in length or depth between parallel lines at right angles to said Tioga Street 75 feet.

That the defendant Daniel J. Britt is a builder in the City of Philadelphia, and is the son of the defendant Mary Britt.

That the defendants, Mary Britt and Daniel J. Britt, obtained a permit to erect a public garage building on the premises Nos. 818-820 East Tioga Street and are about to erect at the present time on this vacant lot a one-story brick public garage, covering the entire surface of the above lot.   The Department of Public Works permit states that the new building will be used for the purpose of "Automobile Accessory Shop."   Counsel for the defendant admits, on page 10 of the testimony, that, in addition thereto, this building will be operated as a garage.

That there are no restrictions in any of the deeds against objectionable uses or occupations.   That no work has been started upon this garage, and in fact the lot at the present time is used as an open-air storage for one or two old automobiles and a wagon.

In the bill in equity it is averred that the neighborhood is residential and consists of dwelling-houses and neighborhood stores with dwellings attached.

That Tioga Street, between "G" and "H" Streets, on the south side where the lot is situate, consists of a number of two-story houses.   On the southeast corner of "G" and Tioga Streets there is a real estate office;  to the east of it there is a small German church;  the property adjoining it is a two-story dwelling with a cigar store on the first floor front, and all the other lots have erected thereon two-story houses, continuing uninterruptedly to the corner of "H" Street, with the exception of the lots in question at Nos. 818-820 East Tioga Street and the property at the southwest corner of Tioga and "H" Streets, which is a meat market.

That the north side of this street is broken by two streets at right angles to Tioga Street, about equal distances apart, to wit, Pennhurst Street and Shelburne Street.   The property at the northeast corner of "G" Street and Tioga Street is a saloon.   There are three houses between the saloon and Pennhurst Street.   At the northeast corner of Pennhurst Street and Tioga Street there is a grocery store, and there are several two-story dwellings between this street and Shelburne Street;  from Shelburne Street east there

are a number of dwellings until the corner is reached, where there is a large L-shaped public garage at the northwest corner of "H" and Tioga Streets, the entrance being on Tioga Street, and the larger portion of the garage running in the rear of the northern boundaries of the Tioga Street houses. "H" Street north of Tioga Street is not cut through, but is the entrance to the Bellevue Cemetery. North of Tioga Street, about 200 feet, there is an open space occupied by a large mill, and also what appears to be a gas-works, with a large gas tank back of the dead end of Shelburne Street. That Tioga Street to the west of "G" Street, especially on the south side, is given over to a number of stores. That on the western side of "G" Street, north of Tioga Street, there are several stores and garages and automobile accessory places. That Tioga Street is paved with asphalt, is about 60 feet wide and is largely used by vehicles.

That in the bill the complainants aver that the defendants intend to lease for hire, for the storage of automobiles, this garage when constructed, and that the maintenance and use thereof as an accessory store and garage is an offensive purpose and occupation and will disturb and annoy the complainants and greatly depreciate the values of their respective properties, and, furthermore, that the construction of the garage in a strictly residential neighborhood constitutes a nuisance.

There is a prayer in the bill asking that Mary Britt and Daniel J. Britt be restrained from erecting the building and permitting any person or persons to obtain or erect said building upon said land, or any part thereof, for the purpose above described.

A rule was granted to show cause why a preliminary injunction should not issue. At the hearing, testimony was submitted by the claimants and also by defendants. The locality was visited and examined by the chancellor.

The chancellor found, with the exception of a few neighborhood stores heretofore described, that this is a strictly residential street. Some of the witnesses produced by the defendant seemed to think that this particular garage, when constructed, would be a benefit to the neighborhood rather than to have the entire lot remain as it is at present.

A garage is not a nuisance *per se*, although in a strictly residential section it has been held in numerous cases that it is a nuisance. It depends entirely upon the character of the neighborhood. If the neighborhood is residential, it is quite patent that it would be a nuisance to establish in the midst of such a neighborhood a public garage. If, however, the district is devoted to manufacturing or other business, or is rapidly changing by reason of the growth of the city from a residential section to a section devoted to business and trade, the court will not throw the same degree of protection around the property owners in its efforts to protect the status of the neighborhood.

In the opinion of Henderson, J., in the case of Tyson et al. v. Coder, 83 Pa. Superior Ct. 116, he states: "An occupation which produces annoying noises or offensive odors may be carried on without legal impediment in some localities which would not be admitted in a residential district against the objections of persons living there. . . . But the prohibition is not limited to cases of a restriction against nuisances in a deed. It has been enforced against the erection of a public garage in a residential neighborhood because of the character of the neighborhood and the method of business proposed to be conducted, the doctrine being that a neighborhood which has been pre-empted by the construction of residences, and is adapted to that use, is entitled to protection against the introduction of a business which would subject the residents to discomfort, inconvenience, risk and depreciation of property, resulting from the prosecution of such business."

It has become a settled principle of equity that the maintaining of a public service garage in a strictly residential section of the city will be restrained where such business is shown to be destructive or prejudicial to the quiet and orderly condition of the neighborhood and the comfort and enjoyment of the occupants of the houses situate in that neighborhood, because of noises, offensive odors, and the obstruction of the streets and footways by the increased number of vehicles brought in the neighborhood.

There may arrive a time when the condition of that particular neighborhood will change. It may lose its residential character and become a mixed or business neighborhood. At the present time, however, it is a residential neighborhood, especially in the square in which the complainants reside, and as such equity will afford the complainants a remedy.

And now, to wit, Aug. 13, 1924, a rule for a preliminary injunction is allowed, and it is ordered that the bill be retained so that a final hearing may be had in this matter.